UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTIE MOLL | CIVIL ACTION |
| VERSUS | NO. 13-6086 |
| INTUITIVE SURGICAL, INC., ET AL. | SECTION "L" (2) |

### ORDER & REASONS

Before the Court is Defendant Ochsner Health System's motion to dismiss based on prematurity (Rec. Doc. 7) and Plaintiff Christie Moll's motion to remand (Rec. Doc. 15). Having considered the parties' memoranda and applicable law, and after hearing oral argument, the Court now issues this order.

### I.   BACKGROUND

This class action was brought by Ms. Moll, on behalf of herself and others similarly situated, in order to recover for injuries sustained as the result of a robot-assisted laparoscopic hysterectomy. Ms. Moll initially filed suit in the 24th Judicial District Court for Jefferson Parish on September 11, 2013, against Defendants Ochsner and Intuitive Surgical, Inc. According to Ms. Moll's petition, Ochsner purchased a da Vinci Surgical System from Intuitive, who designed, patented, manufactured, sold, and distributed the robotic device. Ms. Moll states that the device was used during her May 3, 2011, robot-assisted laparoscopic hysterectomy. Ms. Moll alleges that she suffered a left ureter cautery burn that prevented a post-operative stent. As a result, Ms. Moll had to undergo an ureteral re-implantation.[1]

---

[1] Ms. Moll's petition alleges that on May 8, 2013, Intuitive, manufacturer of the da Vinci Surgical System, sent an "urgent medical device notification" to Ochsner "warning [it] of a possible risk of internal burns during surger[ies]." (Rec. Doc. 1-1 at 3).

Ms. Moll asserts a class action under Articles 591 through 597 of the Louisiana Code of Civil Procedure, and defines that class as including "[a]ll Louisiana patients of Ochsner Health System who were injured (burned or lacerated) during . . . robotic surgery at the Ochsner Health System [facility] located in Jefferson, Louisiana." (Rec. Doc. 1-1 at 3). Specifically, she alleges: that Ochsner breached its duty to "furnish its hospital with reasonably adequate surgical equipment," as required by Article 2315 of the Louisiana Civil Code, that Ochsner had "custody[,] garde[,] and control" over the device and "knew or should have known of [its] unreasonably dangerous nature," making it strictly liable for her injuries under Article 2317; and that Intuitive both had and breached its "duty to exercise reasonable care when designing, testing, manufacturing, marketing, advertising, promoting, distributing and/or selling [the device] for [use in] hysterectom[ies]," as required by the Louisiana Products Liability Act. (*Id.* at 7-8). On October 8, 2013, Intuitive removed to this Court, on the basis of diversity jurisdiction. (Rec. Doc. 1).

## II.   PRESENT MOTIONS

There are several interrelated motions currently before the Court.[2] First, Ochsner moves to dismiss on the basis that it is a qualified healthcare provider under the Louisiana Medical Malpractice Act ("MMA") and that, because Ms. Moll has not proceeded through the necessary medical review panel process, any claim against it is therefore premature. Second, Ms. Moll, who is a Louisiana resident, moves to remand on the basis that the presence of Ochsner, which is a Louisiana corporation, defeats diversity jurisdiction. She asserts that her claims against Ochsner are not governed by the MMA and thus properly joined. The parties also dispute

---

[2] On October 15, 2013, Ochsner filed the present motion to dismiss based on prematurity. (Rec. Doc. 7), and on November 7, 2013, Ms. Moll filed the present motion to remand (Rec. Doc. 15). Both motions were submitted on February 4, 2014. (Rec. Doc. 23).

whether Ms. Moll's claims are governed by the Class Action Fairness Act ("CAFA"). If they are, only minimal—not complete—diversity is required.

**III.    LAW & ANALYSIS**

In its notice of removal, Intuitive asserts that both minimal diversity and complete diversity exist. First, in a class action governed by CAFA, minimal diversity exists where "the matter in controversy exceeds the sum or value of $5,000,000 . . . and any member of [the] class . . . is a citizen of a State different from [that of] any defendant." 28 U.S.C. § 1332(d)(2). The class must also include more than 100 individuals. *Id.* § 1332(d)(5). The removing party bears the burden of establishing CAFA jurisdiction, and once established, the non-removing party bears the burden of establishing any exception. *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007). Here, minimal diversity exists because Ms. Moll, a Louisiana resident, is diverse from Intuitive, a Delaware corporation. Further, it is undisputed that the class includes more than 100 individuals.

Ms. Moll, however, suggests that CAFA's local-controversy exception applies. Under that exception, CAFA jurisdiction is precluded if (1) more than two-thirds of the class is from the state in which the action was filed, (2) significant relief is sought from a non-diverse defendant whose conduct forms a significant basis for the action, (3) the principal injuries were sustained in the state in which the action was filed, and (4) a similar action has not been filed within the past three years. 28 U.S.C. § 1332(d)(4). As this Court has previously noted, "[t]he language of CAFA 'favors federal jurisdiction over class actions and CAFA's legislative history suggests that Congress intended the local controversy exception to be a narrow one, with all doubts resolved in favor of exercising jurisdiction over the case.'" *Sherman v. Mantle Oil & Gas, LLC*, No. 10–2774, 2011 WL 130240, at *2 (E.D. La. Jan. 14, 2011) (quoting *Evans v. Walter Indus., Inc.*, 449

F.3d 1159, 1163 (11th Cir. 2006)). Here, the class is defined narrowly as including only Louisianans. However, there does not appear to be any substantive reason for this distinction except to escape jurisdiction. There is nothing about Ms. Moll's alleged injury that suggests it is unique to individuals in Louisiana. In fact, the machine that caused her injury appears to have been distributed and used throughout the United States. Further, the entity that created, designed, manufactured, and distributed the machine that allegedly caused the injury is not a Louisiana entity. Therefore, this is simply not the type of dispute for which CAFA's local-controversy exception was created. To the extent that this matter has a provincial aspect, it is not sufficient to overcome jurisdiction under CAFA.

Second, Intuitive argues that, notwithstanding the existence of minimal diversity and resulting CAFA jurisdiction, the parties are also completely diverse, allowing the exercise of ordinary diversity jurisdiction. In an action that is not governed by CAFA, complete diversity exists where "the matter in controversy exceeds the sum or value of $75,000" and all adverse parties are "citizens of different States." *Id.* § 1332(a). "But a defendant may [also] remove by showing that the nondiverse party was joined improperly." *Taylor v. Ochsner Clinic Found.*, Nos. 11–1926, 11–2221, 2011 WL 6140885, at *2 (E.D. La. Dec. 9, 2011) (Vance, C.J.) (citing *Smallwood v. Ill. Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir. 2003)). Here, Ms. Moll, a Louisiana resident, is diverse from Intuitive, a Delaware corporation, but not diverse from Ochsner, a Louisiana corporation. Accordingly, complete diversity may only exist in the event that Ochsner has been improperly joined.

"The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity." *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005). "To establish a claim for improper joinder, the party seeking removal must demonstrate either (1) actual fraud in the

4

pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* (internal quotation marks omitted). Actual fraud in the pleading is not implicated here. With respect to the inability to establish a cause of action, a court must examine "whether the [removing] defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant[,] which[,] stated differently[,] means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* (internal quotation marks omitted). The removing defendant has the heavy burden of establishing this. *See id.* To determine if joinder was improper, a court uses a Rule 12(b)(6) analysis. "Ordinarily, if a plaintiff can survive a Rule 12(b)(6)-type challenge, there is no improper joinder." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309 (5th Cir. 2005) (internal quotation marks omitted).

    Here, both the motion to dismiss and the motion to remand revolve around the issue of whether Ochsner was improperly joined. If improperly joined, Ochsner's dismissal would create complete diversity. If properly joined, Ochsner may not be dismissed and its presence will destroy the existence of diversity, mandating remand (provided there is not another basis for jurisdiction, such as CAFA).

    Specifically, the issue here is whether the claims against Ochsner sound in medical malpractice. If so, Ms. Moll's failure to proceed through a medical review panel process prior to filing this action will mandate dismissal. In determining the applicability of the MMA to the claim here, it is necessary to ascertain whether it was made against a healthcare provider, which is a "corporation, facility, or institution licensed or certified by this state to provide health care or professional services as a physician [or] hospital." *Id.* § 40:1299.41(a)(10). Ochsner has

produced the requisite licensure or certification to establish its status as a healthcare provider. (Rec. Docs. 7-4, 7-5). Ms. Moll does not appear to dispute this.

Next, it is necessary to consider Ochsner's alleged conduct. The MMA defines the term "malpractice" as:

> [A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, . . . including . . . all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

LA. REV. STAT. § 40:1299.41(a)(13). In turn, the term "healthcare" refers to "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement . . . ." *Id.* § 40:1299.41(a)(9). "In general, any conduct by a hospital complained of by a patient is properly within the scope of the [MMA] if it can reasonably be said that it comes within the definitions of the act, even though there are alternative theories of liability." *Rogers*, 626 So.2d at 777. Further, "[m]alpractice includes a health care provider's strict liability for some defective items used during the course of a patient's treatment; [that is], defective blood, tissues, transplants, drugs, medicine, and prosthetic devices." *Id.* "When the tort alleged relates to an injury caused by a m[al]function in a medical device instrumental in providing medical services, the case for classifying the associated negligence as medical malpractice becomes stronger." *Taylor*, 2011 WL 6140885, at *9.

Here, the MMA applies to the claims made by Ms. Moll against Ochsner. This is an unintentional tort that is based on healthcare services rendered. It clearly involves the

responsibility of a healthcare provider with regard to "defects in or failures of prosthetic devices implanted in or used on or in the person of a patient." LA. REV. STAT.§ 40:1299.41(a)(13). It does not matter that the device at issue is not the patient's prosthetic, but the doctor's.[3]

This conclusion is reinforced by the Louisiana Supreme Court's six-factor test for determining whether particular conduct is considered malpractice within the scope of the MMA. *Coleman v. Deno*, 813 So. 2d 303, 315-18 (La. 2002). Those factors are: (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill, (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient's condition, (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform, (5) whether the injury would have occurred if the patient had not sought treatment, and (6) whether the tort alleged was intentional. *Id.*

First, the defect in the device is properly considered treatment related because, unlike a hospital bed or other object the hospital owns, the device is only used in medical procedures. Second, expert testimony is likely necessary to test the surgeon's decision as to whether and how to use the device. Third, the decision as to whether and how to use the device necessarily involved a decision regarding the patient's condition, including the condition before and during the surgery itself. Fourth, the incident occurred during a surgical procedure, which is clearly within the context of the physician-patient relationship and the scope of a hospital's activities. Fifth, the injury would not have occurred if the patient had not sought treatment. Sixth, while

---

[3] *Steadman's Medical Dictionary* defines the term "surgical prosthesis" as "an appliance prepared as an aid or as part of a surgical procedure." *Prosthesis*, Steadman's Med. Dict. (27th ed. 2000).

7

there is some suggestion of an improper financial motive in Ochsner's decision to use the device, this does not appear to be well-grounded, given the context of the entire petition.

In short, the face of the petition alleges claims of malpractice against Ochsner. Those claims are premature because Ms. Moll has not first complied with the applicable requirements of the MMA. Ms. Moll cannot state a claim against Ochsner at this time, and accordingly, Ochsner was improperly joined. Therefore, Ochsner's citizenship is ignored and complete diversity exists.[4]

## IV.   CONCLUSION

For these reasons, **IT IS ORDERED** that Ochsner's motion to dismiss (Rec. Doc. 7) is **GRANTED** and Ms. Moll's claims against it are **DISMISSED**.

**IT IS FURTHER ORDERED** that Ms. Moll's motion to remand (Rec. Doc. 15) is **DENIED.**

New Orleans, Louisiana, this 31st day of March, 2014.

_____
UNITED STATES DISTRICT JUDGE

---

[4] As noted above, minimal diversity under CAFA also exists.